**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **J.D.**

**No. 22-785** (Mercer County 21-JA-85-WS)

**MEMORANDUM DECISION**

Petitioners K.D. and C.D.,[1] the prior placement for the child, appeal the Circuit Court of Mercer County's August 18, 2022, order denying them permanent placement of J.D.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

This matter was initiated in July 2021, shortly after the birth of J.D.,[3] who remained hospitalized because of drug exposure. The DHHR initially placed the child with petitioners, fictive kin to the child's mother, and J.D. remained in their care throughout the proceedings. Ultimately, the child's mother voluntarily relinquished her parental, custodial, and guardianship rights to J.D. in November 2021, while the unknown father's parental, custodial, and guardianship rights were terminated in January 2022.

It is also important to note that prior to the filing of the instant petition, the mother's parental rights to a half-sibling to J.D. were terminated, and C.P., intervenor herein, adopted that sibling. Before this Court, the DHHR admits that it failed to comply with certain statutory requirements to provide C.P. with notice and the opportunity to be considered as a placement for J.D. According to the record, after becoming aware of J.D. through other means, C.P. contacted the DHHR and was told to retain an attorney. After obtaining counsel, C.P. filed a motion to intervene in March 2022 seeking placement of J.D.

---

[1]Petitioners appear by counsel P. Michael Magann. The West Virginia Department of Health and Human Resources ("DHHR") appears by counsel Attorney General Patrick Morrisey and Assistant Attorney General Steven R. Compton. Counsel Thomas M. Janutolo Jr. appears as the child's guardian ad litem. Intervenor C.P. appears by counsel E. Raeann Osborne.

[2]We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

[3]At the time, the child was referred to as J.L. However, the child's birth certificate later revealed his initials to be J.D.

The court then held a permanency hearing in May 2022, during which petitioner K.D. testified to petitioners' care for the child and other issues. Thereafter, a Child Protective Services supervisor testified and admitted that C.P.'s name was contained in the mother's DHHR file and that she was reflected as having adopted the mother's older child. The witness also confirmed that DHHR policy directs that when there has been a prior termination, the individual who adopted the older child is to be contacted and given the opportunity to have the new child placed in their home. Despite this policy, the DHHR failed to contact C.P. about placement of J.D. The witness further explained that both petitioners' home and C.P.'s home were appropriate for the child. The court also heard from C.P., who testified that J.D. was permitted to visit with the sibling that C.P. adopted. Noting that the decision between the two homes was difficult, the court took the matter under advisement at that time.

Finally, the parties convened for a hearing in June 2022 for the court to issue its ruling. The court found that at the time of the initial removal, the DHHR had a statutory duty to contact C.P. in order to give her an opportunity to have J.D. placed in her home along with the child's older sibling. Although J.D. lived with petitioners from the time of his removal until the dispositional hearing, the court concluded that the child's best interests were served by being placed in a home with a biological sibling. The court stressed that both homes were appropriate and that the child would thrive in either. However, the court considered J.D.'s right to be placed with a sibling and believed that, as J.D. aged, the relationship with that sibling would become more important. Citing the child's young age, the court believed that J.D. would "be able to adapt to a new placement" and ordered that his transition to C.P.'s home be gradual. Accordingly, the court ordered that the child be placed permanently with C.P. It is from the dispositional order that petitioners appeal.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Before this Court, petitioners argue that the circuit court erred in permanently placing the child with C.P. Petitioners argue that this case is directly analogous to *In re A.C. and C.S.*, No. 21-0470, 2022 WL 1440656 (W. Va. May 6, 2022)(memorandum decision), in which this Court upheld a denial of permanent placement of a child with a grandparent. Petitioners cite this case for its discussion of the DHHR's failure to contact the grandparent, similar to the DHHR's admitted failure to contact C.P. in the current matter. While petitioners are correct that these cases share a similar factual pattern, they ignore the fact that the ultimate decision to deny the grandparent permanent placement in *A.C.* was predicated on the fact that he lacked suitable housing. *Id.* at *1. Unlike in *A.C.*, the circuit court here recognized that C.P.'s home was appropriate for the child, a fact petitioners readily admit. As such, we find little value in the application of *A.C.* to the current matter.

Further, petitioners cite to West Virginia Code § 49-4-601a[4] and § 49-4-111,[5] arguing that neither statute required placement with C.P. While petitioners are correct that neither statute mandated that the child be placed in C.P.'s home, the record nonetheless demonstrates that placement there was consistent with the child's best interests. Additionally, the circuit court considered J.D.'s right to be placed in a home with a sibling, as set forth in West Virginia Code § 49-2-126(a)(6),[6] part of the Foster Child Bill of Rights.

As we have explained,

> W. Va. Code § 49-2-126(a)(6) (2020) requires a circuit court to conduct a best interest of the child analysis by considering a child's needs, and a family's ability to meet those needs. One factor that may be included in this analysis is a child's ability to remain with his or her siblings. A circuit court considering this factor should conduct its analysis in conformity with W. Va. Code § 49-4-111(e) (2015).

---

[4]West Virginia Code § 49-4-601a requires, in relevant part, as follows:

When a child is removed from his or her home, placement preference is to be given to relatives or fictive kin of the child. If a child requires out-of-home care, placement of a child with a relative is the least restrictive alternative living arrangement. The department must diligently search for relatives of the child and fictive kin within the first days of a child's removal and must identify and provide notice of the child's need for a placement to relatives and fictive kin who are willing to act as a foster or kinship parent.

[5]Specifically, West Virginia Code § 49-4-111(e)(1) requires as follows:

When a child is in a foster care arrangement and is residing separately from a sibling or siblings who are in another foster home or who have been adopted by another family and the parents with whom the placed or adopted sibling or siblings reside have made application to the department to establish an intent to adopt or to enter into a foster care arrangement regarding a child so that the child may be united or reunited with a sibling or siblings, the department shall, upon a determination of the fitness of the persons and household seeking to enter into a foster care arrangement or seek an adoption which would unite or reunite siblings, and if termination and new placement are in the best interests of the children, terminate the foster care arrangement and place the child in the household with the sibling or siblings.

[6]According to West Virginia Code § 49-2-126(a)(6), "[f]oster children and children in a kinship placement . . . have the . . . right, when placed with a foster of [sic] kinship family, to be matched as closely as possible with a family meeting the child's needs, including, when possible, the ability to remain with siblings."

3

Syl. Pt. 11, *In re R.S.*, 244 W. Va. 564, 855 S.E.2d 355 (2021). Ultimately, the circuit court's decision in this matter came down to the child's best interest, in accordance with our prior direction. *See* Syl. Pt. 3, *In re K.L.*, 241 W. Va. 546, 826 S.E.2d 671 (2019) ("[T]he welfare of the infant is the polar star by which the discretion of the court is to be guided in making its award of legal custody." (Citation omitted)). Petitioners are to be commended for caring for J.D. during the pendency of the proceedings. As the circuit court noted, the decision between the two homes was difficult because they both offered environments in which the child could thrive. However, considering all the evidence, the court found that placing the child in a home with a biological sibling better served his interest. This is in keeping with our Legislature's stated preference for sibling placement. *See id.*, 241 W. Va. at 547, 826 S.E.2d at 672, Syl. Pt. 2 (recognizing that the Legislature has adopted "a preference for placing siblings into the same adoptive home pursuant to W. Va. Code § 49-4-111 (2015)"). Because the court found that placement with a sibling was in keeping with the child's best interests, we find no error in the court's decision to permanently place the child with C.P.

      For the foregoing reasons, we find no error in the decision of the circuit court, and its August 18, 2022, order is hereby affirmed.

Affirmed.

**ISSUED**: September 20, 2023

**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn

4